GILBERTON CONTRACTING COM-
PANY, Inc.

v.

Kenneth O. HOOK, District Director of
Internal Revenue.

UNITED STATES of America

v.

The RHOADS COMPANY, Inc.

UNITED STATES of America

v.

GILBERTON CONTRACTING COMPA-
NY, Inc., Rhoads Company, Inc. and
Park Trent Coal Company, Inc.

Civ. A. Nos. 25474, 26079, 27696.

United States District Court
E. D. Pennsylvania.

April 24, 1967.

LaBrum & Doak, Lewis Weinstock,
Joseph G. Manta, Philadelphia, Pa., for
Gilberton Contracting Co.

Drew J. T. O'Keefe, U. S. Atty., Sulli-
van Cistone, Asst. U. S. Atty., Philadel-
phia, Pa, David H. Hopkins, Jr., Trial
Atty., Tax Div., Dept. of Justice, Wash-
ington, D. C., for United States.

Israel T. Klapper, George I. Puhak,
Joseph T. Ustynoski, Hazleton, Pa., for
Park Trent Coal Co., Inc.

OPINION

KRAFT, District Judge.

In prior proceedings in these actions [1],
we determined that Park Trent and Gil-
berton were co-owners of a large silt
bank located in Schuylkill County, Penn-
sylvania. We concluded, too, that the
tax liens of the United States were valid
against the portion of the silt owned by
Park Trent.

An adjudication was entered accord-
ingly, but we reserved for later trial and
decision, the following unresolved issues:
(1) the total quantity and value of the
silt; (2) the respective quantities and
values of the portions owned, respective-
ly, by Gilberton and Park Trent; (3)
the validity and extent of any claim by
Gilberton, as a lien or otherwise, for
past and partial use and occupancy of
its land by that portion of the silt owned
by Park Trent.

Thereafter, extensive efforts were
made by all parties to resolve the remain-

---

1. Reported in D.C., 255 F.Supp. 687.

ing issues amicably. When these failed, trial thereof was had to the Court.

The very nature and composition of the silt precluded precise proof of its amount and value as well as precise proof of the respective portions of Gilberton and of Park Trent. However, sufficient proofs were adduced to enable the Court, in the exercise of its equitable jurisdiction, to make a fair, conscionable and reasonable disposition of the controversy.

Accordingly, from the evidence we make the following further

### FINDINGS OF FACT

1. From December, 1954, until October, 1955, Park Trent operated the Park No. 3 breaker and deposited silt and culm on the bank in question, in a bona fide and well-founded belief that it had a legal right to do so.

2. Counties Coal Co. (Counties), which owned the land, and Rhoads Company, Inc. (Rhoads), the former operator of the Park No. 3 breaker from 1950 to 1954, were corporations controlled by Harradon Randall, who negotiated the sale of the Park No. 3 breaker to Park Trent with full knowledge that Park Trent intended to dump upon the same area the silt which would be an inevitable by-product of the breaker operation.

3. Counties, owner of the silt created and abandoned by Rhoads,[2] knew of the contemplated and actual deposit of silt by Park Trent, made no objection thereto and by its continuous silent acquiescence inferably assented to the commingling of Park Trent's silt with that of Counties.

4. The very nature of the customary method of discharge and deposit of silt from the breaker operation necessarily resulted in such a commingling as to make impossible ascertainment of the identity, quantity or quality of the respective deposits, as Counties knew.

5. Visual bulk estimates of the aggregate tonnage are unpersuasive, ranging from a low of 250,000[3] to a high of 700,000 tons; nor has the quality and value of the silt yet been suitably ascertained.

6. Extensive volumetric and quality tests of adequate borings, are essential to determine, with any degree of reasonable certainty, the quantum of marketable sizes of coal in the bank and as well as the ash content or burning quality of the silt.

7. Park Trent, by its own business records and by the reports published by the Commonwealth of Pennsylvania, Department of Mines, Anthracite Division, has fairly established that, during the period of its operation of the Park No. 3 breaker, it (a) had processed 489,000 tons of raw material through the breaker; (b) had sold approximately 148,000 tons of finished coal; and, (c) had deposited, as a by-product of the breaker operation, approximately 340,000 tons of silt on the bank.

8. Gilberton, which now owns the silt initially abandoned by Rhoads, has failed, too, to establish the quantity and quality of the silt which Rhoads had deposited on the bank.

9. The commingling of the silt, which occurred without the fault of either owner, and the inability of the owners to agree upon an amicable distribution of the whole compel a finding that, after consideration of the respective equities of the parties and impossibility of a fair division, in kind, between them, a sale of the entire silt bank under such terms as would fairly and reasonably secure to both owners and the lienor the best available price, with an aliquot distribution of the proceeds, is the most equitable method of dividing the property in issue.

10. Before a sale may be had, prospective purchasers and their qualified agents must be permitted to enter upon the land to conduct the requisite tests to determine the quantity and quality of the silt as bases for any intelligent offers for the silt. A period of eight weeks between the solicitation of offers and the submission thereof is a reason-

---

2. Finding of Fact 10, 255 F.Supp. 687, 690.

3. Finding of Fact 3, 255 F.Supp. 687, 693.

able time to permit essential tests and computations by prospective purchasers.

11. All parties have agreed, and we find,[4] that:

"The normal and usual means of sale for coal silt in the area of northeastern Pennsylvania is by long term lease of the silt bank, bidding by unit price and guaranteed minimum tonnage, the buyer paying an advance minimum royalty computed from the quantity he intends moving in an average year divided into monthly payments."

12. Gilberton, in January, 1957, refused Park Trent permission to enter upon the site of the silt bank to remove any silt which Park Trent claimed to own.[5]

13. By reason of Gilberton's persistent refusal, Park Trent was prevented from removing any of its silt during the period preceding the judicial determination of the contested ownership of the mass.

14. Park Trent's demand for permission to remove and Gilberton's refusal of that permission were both asserted in the bona fide belief that each owned all or a portion of the silt.

15. Under the circumstances, Park Trent, after it ceased operation of the Park No. 3 breaker, did not voluntarily or negligently permit its silt to remain stored upon the 13 acres of the Gilberton 65.9 acre tract. Hence, no lien for past rent or storage of the silt accrued to Gilberton.

16. A period of removal of 24 *working months,* extending over a total period of 4 calendar years, is a necessary and reasonable condition of the sale, in order to attract responsible bidders and to make a purchase of the whole bank economically feasible.

17. During the period of removal Gilberton is fairly and equitably entitled to a wagonage fee of 5 cents for each ton of silt transported from its premises. Gilberton is fairly and equitably entitled as well to a charge in lieu of rental of $25 per acre for each year that the 13 acre portion of its land is used for storage of the silt after its sale and during its removal.

18. Gilberton failed to offer any proof of the assessed or the fair market value of the land nor did it offer any evidence of the fair, reasonable rental value of the Park No. 3 premises or of any part thereof or of any similar land in Schuylkill County.

## CONCLUSIONS OF LAW

1. Park Trent and Gilberton, as owners, are tenants in common of the entire silt bank which contains their respective, unidentifiable commingled deposits.

2. As tenants in common, they have equal equities in the conglomerate mass which should be sold at public sale after reasonable notice. The net proceeds of such sale, after deduction of all selling expenses, should be distributed in equal shares between Gilberton and Park Trent, subject to the tax liens of the United States against the share of Park Trent. 1 Am.Jur.2d § 19 Accession and Confusion; 15A C.J.S. Confusion Of Goods § 5, pp. 550–552; Brown on Personal Property § 32, p. 67 (2d ed. 1955) see Engel's Estate, 413 Pa. 475, 478, 198 A.2d 505 (1964) and other cases cited therein.

3. Gilberton should receive, additionally, from any purchaser or purchasers of the silt: (a) a wagonage fee of 5 cents per ton of silt transported from its land; (b) a charge, in lieu of rental, of $25 per acre per annum for that 13 acre portion of its tract upon which the silt is now deposited following the sale and during the period of its removal by the purchaser.

4. Gilberton is not entitled to any charge or lien for past rent or storage of the Park Trent silt.

5. In order to render complete relief, the Court, as a court of equity, has authority and power to order a sale

---

4. Stipulation filed herein December 5, 1966, Document 46.

5. Finding of Fact No. 28, 255 F.Supp. 687–692.

of property where such property and its owners are subject to the jurisdiction of this Court. Com. for use of Lewistown Trust Co. v. Nestler et al., 312 Pa. 484, 486, 167 A. 354 (1933) ; Brennan v. Pittston Brewing Corp., 344 Pa. 495, 497, 498, 26 A.2d 334 (1942).

6. We adhere to our previous Opinion, Findings of Fact, Conclusions of Law and Discussion, as reported in 255 F.Supp. 687 (1966), and, by reference, incorporate the same as a part of this Adjudication.

7. Gilberton's oral request for reconsideration of our previous findings and conclusions is without merit and will be denied.